Filed 5/24/13  In re Sergio M. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re SERGIO M., a Person Coming Under the Juvenile Court Law. | B244322<br>(Los Angeles County<br>Super. Ct. No. NJ26254) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SERGIO M.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Charles R. Scarlett II and John C. Lawson II Judges.  Affirmed.

Esther R. Sorkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Noah P. Hill, Deputy Attorney General, for Plaintiff and Respondent.

Minor Sergio M. appeals from the order of wardship entered following a finding that he committed attempted robbery. Minor contends that the evidence was insufficient to support the juvenile court's finding that he committed attempted robbery because there was no evidence he used force. We affirm.

## BACKGROUND

On April 4, 2012, minor entered a store in Torrance where Mehdi Amini and his brother Gosham Amini were working. Minor apparently left his skateboard near the store entrance, then went to a rack of sunglasses. Mehdi testified that he saw minor remove two pairs of sunglasses from the rack and place them in his pocket. Mehdi approached minor and asked minor to give him the sunglasses. Mehdi testified that minor refused and said, "'You cannot touch me.'" Mehdi said he was not going to touch minor, but was asking for the sunglasses. Mehdi testified that minor "just act[ed] angry, and he came toward me; and he goes, 'Look. You cannot touch me.'" Mehdi told minor he was going to call the police, then did so. Mehdi testified, "I was on the phone with the officer. Then he start going through the—my brother, he was over there. He just push him and tried to force himself out, and he grabbed his skateboard. That's the time I thought he was going to strike him with the skateboard, because he was holding it to him." The prosecutor asked, "You observed Sergio pushing your brother?" Mehdi replied, "Yeah, he pushed him, because I—he's coming through the checkstand. It's narrow. But he pushed him. And he has a heart condition." Mehdi testified that after minor grabbed his skateboard, "[W]e took it away from him. And the way he was moving and shaking up the things, we just hold him down." Mehdi then testified that only he, not his brother, held minor, and while Mehdi was holding minor, minor "put his hand in his pocket. He throw the sunglasses up in the air." Mehdi restrained minor until the police arrived.

On cross-examination, Mehdi testified that when he held minor, he was on top of minor, who was on the floor. Mehdi was six feet tall and weighed about 250 pounds. Gosham was the same height and weighed about 220 pounds. Mehdi denied that both he and Gosham held minor, but then testified, "He hold him when he strike him."

2

Rosemary Diaz testified that she and her foster child were in the store at the time of the events giving rise to the attempted robbery allegation against minor. When she walked into the store, Diaz saw Mehdi staring toward the back of the store. Diaz went down two aisles before she saw minor. Mehdi said something to minor like, "'You got something in your pockets.'" Minor denied he had anything in his pockets. Diaz testified that Mehdi went up to minor and "kind of grabbed him," then minor "fell back; and [Mehdi] got him from the legs and dragged him from where [minor] was all the way to the counter where he was behind the register." Minor was "struggling" and received a "burn" on his face from Mehdi dragging him. Diaz testified that Mehdi had minor in a "choke-hold," but Diaz protested, so Mehdi lowered his arm to minor's shoulder. Mehdi then grabbed minor's skateboard and Diaz thought Mehdi was going to strike minor with it, so she again protested. Mehdi then dropped the skateboard. Mehdi's brother got on top of minor, too. Mehdi said he was going to call the police and minor said, "'Why? That's unnecessary. I didn't do anything.'" At some point, one of the Amini brothers turned minor's pockets inside out while the other one held him down. Diaz did not see anything in minor's pockets. After the police arrived, Diaz noticed a single pair of white sunglasses on a chair in the corner near the cash register. Diaz never saw minor hit or push either of the Amini brothers.

The juvenile court sustained a Welfare and Institutions Code section 602 petition alleging attempted robbery, declared minor to be a ward of the court, and ordered him home on probation on conditions including completion of 60 days of community detention program. Minor successfully completed the program, and at a second dispositional hearing, he was placed home on probation.

## DISCUSSION

Minor contends that the evidence was insufficient to support the juvenile court's finding that he committed attempted robbery because there was no evidence he used force.

To resolve this issue, we review the whole record in the light most favorable to the juvenile court's order to decide whether substantial evidence supports the court's finding, so that a reasonable fact finder could find the allegation true beyond a reasonable doubt. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)  We also presume in support of the juvenile court's finding the existence of every fact the trier could reasonably deduce from the evidence and make all reasonable inferences that support the finding.  (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1089.)

Robbery is defined as the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property.  (Pen. Code, § 211; *People v. Marshall* (1997) 15 Cal.4th 1, 34.)

"A defendant who does not use force or fear in the initial taking of the property may nonetheless be guilty of robbery if he . . . 'uses force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence . . . .'" (*People v. McKinnon* (2011) 52 Cal.4th 610, 686–687 (*McKinnon*), quoting *People v. Estes* (1983) 147 Cal.App.3d 23, 27–28 (*Estes*).)  "It is the conduct of the perpetrator who resorts to violence to further his theft, and not the decision of the victim to confront the perpetrator, that should be analyzed in considering whether a robbery has occurred." (*People v. Gomez* (2008) 43 Cal.4th 249, 264.)

"The force required for robbery is more than 'just the quantum of force which is necessary to accomplish the mere seizing of the property.' [Citation.]" (*People v. Garcia* (1996) 45 Cal.App.4th 1242, 1246, disapproved on another ground in *People v. Mosby* (2004) 33 Cal.4th 353, 365, fn.3.)  But the degree of force is immaterial; all that is required is sufficient force to overcome the victim's resistance.  (*Ibid.*; *People v. Jones*

4

(1992) 2 Cal.App.4th 867, 870.)  Whether the evidence demonstrates a use of force or fear is a factual question.  (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1707.)  In determining whether force was used, the trier of fact may consider and compare the physical characteristics of the victim and the defendant.  (*Id*. at p. 1709.)

"An attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act (beyond mere preparation) toward its commission.  [Citations.]  Under general attempt principles, commission of an element of the crime is not necessary.  [Citation.]  As such, neither a completed theft [citation] nor a completed assault [citation], is required for attempted robbery."  (*People v. Medina* (2007) 41 Cal.4th 685, 694–695.)  The direct, ineffectual act need not reflect the use of force or fear.  (*People v. Vizcarra* (1980) 110 Cal.App.3d 858, 862.)  "[A]n attempted robbery *may* also include this element of the offense, but it is erroneous to say that the crime *must* have progressed this far in order to constitute an attempt."  (*Id.* at pp. 862–863.)

Here, Mehdi's testimony that minor pushed Gosham was sufficient to support a finding that minor either used force or attempted to use force to escape with the sunglasses.  Gosham was apparently blocking minor's exit from the store, and minor attempted to get past him by pushing him.  This constitutes an attempt to use force to resist a store employee's attempt to prevent him from escaping with the stolen property.  There can be no doubt that if minor had succeeded in pushing Gosham out of his way, the force he used would be deemed sufficient, and it is probable minor would have completed the robbery.  (See *McKinnon*, *supra*, 52 Cal.4th at pp. 686–688 [sufficient evidence of force to support robbery where defendant shoved teacher who attempted to block defendant from leaving school cafeteria with cash box].)  That minor's push was ineffective in no way detracts from the sufficiency of the push to support the juvenile court's finding that minor committed an attempted robbery.

Minor argues that because he was much smaller than Gosham, his push should not be deemed to constitute the use of force.  This overlooks the nature of the charge (*attempted* robbery) and the absence of any evidence in the record regarding minor's

height, weight, or strength. In any event, the juvenile court had the opportunity to view minor and was thus able to compare minor's physical characteristics with Mehdi's testimony regarding Gosham's size, and it found sufficient use of force to support the attempted robbery allegation.

Minor also argues that the push of Gosham was "essential to an escape" and "more analogous to the 'quantum of force which is necessary to accomplish the' taking . . . rather than an application of force that is in addition to the force required to take the property (or to escape with it)." Minor mischaracterizes both the facts and the law. Minor had already acquired physical possession of the sunglasses by taking them from the rack and placing them in his pocket before he pushed Gosham. He applied force during the attempted asportation portion of the crime, which placed him squarely within the legal principle that a theft becomes robbery if force or fear is used during asportation. In every *Estes*-type robbery, the use of force or fear is "required" to escape with the property, but this "necessity" does not nullify the legal effect of the perpetrator using force or fear.

In addition, Mehdi's testimony supported an inference that minor attempted to use fear to escape when he picked up his skateboard and "[held] it to [Gosham]" in a manner that caused Mehdi to think minor was going to strike Gosham with the skateboard.

Minor argues, in essence, that the juvenile court misunderstood the law because it based its finding of force upon the victims' use of force. Just before minor's closing argument, the court characterized this as "a classic case" "with respect to the petty theft turning into a robbery." Minor responded, "I believe that a petty theft that the court is referring to that is turning into a robbery, there has to be a struggle over retention of the property." The court stated, "That's what it was. They had to use force to get the property back." Minor noted, "But it's not them using the force to get the property back. It's the defendant having to use force to retain the property. [¶] The defendant never used force against the people asking for it back, to retain the property." Minor argued that he did not struggle to retain the sunglasses, but only in self-defense because Mehdi had him in a choke hold. The court responded that minor "was struggling to keep them

6

from getting the sunglasses back." Minor then argued, "He didn't use physical force to keep them from getting them." The court responded, "To resist them from getting them. [¶] And then he finally, all of a sudden, based on the testimony, if I believe the victim in the case, when he saw that he wasn't going to let him go, then he threw them out in the store." We conclude that the court's initial statement about the victims using force did not reflect a belief that a robbery (or attempted robbery) is committed where the victim, but not the defendant, uses force. The court's later remarks reveal that the court understood the law and found that minor used force "[t]o resist [the victims] from getting [the sunglasses]" back. The initial statement appears to be merely a comment upon minor's argument.

Minor also argues that there was no evidence that he struggled to retain the sunglasses. We note that although the juvenile court referred to minor "struggling," and the only evidence of minor struggling was Diaz's testimony that minor struggled as Mehdi dragged him across the floor, the court's use of this word apparently stemmed from minor's argument that "there has to be a struggle over retention of the property." The court clearly found minor used force to resist the Amini brothers from retaking the sunglasses, substantial evidence supports this finding, and the juvenile court's use of the word "struggle" does not undermine the sufficiency of the evidence to support the court's finding.

7

**DISPOSITION**

The order under review is affirmed.

NOT TO BE PUBLISHED.

MALLANO, P. J.

We concur:

ROTHSCHILD, J.

CHANEY, J.

8